## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

DAVID R. THOMAS,
*Plaintiff*,

v.

VIRGINIA BRASHER-CUNNINGHAM, ET
AL.,
*Defendants.*

No. 3:19-cv-1981 (VAB)

## RULING AND ORDER ON MOTIONS TO DISMISS AND MOTION TO REMAND

David R. Thomas ("Plaintiff") sued Virginia Brasher-Cunningham, Stephen Dudley,

Debora M. Hess, Sarah Beers, and Jean Gresham (collectively, "Individual Defendants"); the

First Congregational Church of Guilford, the National Conference of the United Church of

Christ, the Connecticut Conference of the United Church of Christ, and All Members of the First

Congregational Church of Guilford (collectively, "Church Defendants"); and the Guilford Police

Department, in Connecticut Superior Court. Compl., ECF No. 1-2 (July 31, 2019). Defendants

subsequently removed the case to this Court. Notice of Removal, ECF No. 1 (Dec. 18, 2019).

Various Defendants have filed a total of five motions to dismiss. Mot. to Dismiss, ECF

No. 19 (Jan. 6, 2020) ("National UCC Mot"); Mot. to Dismiss, ECF No. 23 (Jan. 8, 2020)

("Guilford FCC Members Mot."); Mot. to Dismiss, ECF No. 25 (Jan. 8, 2020) (duplicating ECF

No. 23); Mot. to Dismiss, ECF No. 33 (Jan. 24, 2020) ("Individual & Church Defs.' Mot.");

Mot. to Dismiss, ECF No. 35 (Jan. 24, 2020) ("Guilford PD Mot.").

Mr. Thomas has filed a motion to amend the Complaint to add defendants, Request for

Leave to Amend Compl., ECF No. 47 (Feb. 10, 2020) ("Pl.'s Mot. to Amend"); and a motion to

remand this case to Connecticut Superior Court, Mot. to Remand, ECF No. 39 (Feb. 7, 2020).

Additionally, at the video hearing on pending motions, Mr. Thomas voluntarily moved to dismiss the Guilford Police Department, the National Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford from this case.

For the following reasons, Plaintiff's oral motion to dismiss the Guilford Police Department, the National Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford, ECF No. 67, is **GRANTED**; Defendants' motions to dismiss these same Defendants, ECF Nos. 19, 23, 25, 33 (in part), and 35, are **DENIED** as moot; Defendants' motion to dismiss any remaining Defendants, ECF No. 33 (in part), is **GRANTED;** Plaintiff's motion to amend, ECF No. 47, is **DENIED**; and  Plaintiff's motion to remand, ECF No. 39, is **GRANTED**.

## I.     FACTUAL AND PROCEDURAL BACKGROUND

### A.  Factual Allegations[1]

<u>Parties</u>

Mr. Thomas is a resident of Connecticut and has been a member of the First Congregational Church of Guilford ("Guilford FCC") in Guilford, Connecticut, since 1999. Compl. I ¶ 1.[2]

Mr. Thomas has sued the Guilford Police Department. *Id.* II.

Additionally, Mr. Thomas has sued Church Defendants:

- Guilford FCC, allegedly a Connecticut Church "owned and operated by its Members and is associated with the United Church of Christ ["UCC"]," *id.* I ¶ 7;

- All Members of the First Congregational Church of Guilford ("Guilford FCC Members"), *see, e.g.*, *id.* XI ¶ 1;

---

[1] All factual allegations are drawn from the Complaint and the first amendment to the Complaint. Compl., ECF No. 1-2 (July 31, 2019); Am. to Compl., ECF No. 26 (Jan. 8, 2020) ("First Am. to Compl.").

[2] Plaintiff organizes the allegations in his Complaint into twenty-one counts and repeats paragraph numbers in different counts. The Court will cite to Counts (by roman numeral) and paragraph number for clarity.

- National Conference of the United Church of Christ ("National UCC"), *see, e.g.*, *id.* VI ¶ 3;

- Connecticut Conference of the United Church of Christ ("Connecticut UCC") *see, e.g.*, *id.*;

Mr. Thomas has also sued the following individuals:

- Debora M. Hess, allegedly Mr. Thomas's ex-wife, *see, e.g.*, *id.* I ¶ 9;

- Virginia "Ginger" Brasher-Cunningham, allegedly Minister of Guilford FCC since July 2015, *id.* I ¶¶ 5, 7; and allegedly "an Ordained Minister of the United Church of Christ," *see, e.g.*, *id.* VI ¶ 1;

- Stephen Dudley, allegedly Chair of the Church Council of Guilford FCC, *see, e.g.*, *id.* I ¶ 7;

- Sarah Beers, allegedly Co-Chairperson of the Board of Deacons of Guilford FCC, *see, e.g.*, *id.* IV ¶ 1; and

- Jean Gresham, allegedly Co-Chairperson of the Board of Deacons of Guilford FCC, *see, e.g.*, *id.* IV ¶ 2.

Factual Allegations

On April 29, 2000, Mr. Thomas and Ms. Hess were allegedly married at Guilford FCC, where they were both members. Compl. III ¶¶ 1–2.

From 2000 to 2015, Mr. Thomas allegedly "volunteered and served" Guilford FCC in various capacities. *Id.* III ¶ 3.

The Motto of the UCC and Guilford FCC, allegedly announced by Ms. Brasher-Cunningham at the beginning of each Sunday Service, is allegedly "No Matter Who You Are or Where You Have Been, You Are Welcome Here." *Id.* IX ¶ 1, XVII ¶ 1.

On July 24, 2015, Mr. Thomas was arrested, and he later was convicted and received a prison sentence. *See* https://www.jud.ct.gov/crim.htm (follow "Convictions – by Docket

Number" hyperlink; then enter Docket No. N23N-CR15-0207052-T); *see also* Compl. XIV ¶ 12, XVI ¶ 1.

When Mr. Thomas was initially incarcerated, a Co-Minister at Guilford FCC who is not named in this lawsuit allegedly visited him once. *Id.* XIV ¶ 6. She allegedly "entered the visiting room, picked up the inmate intercom telephone and said to the Plaintiff 'You are Evil[,'] hung up the telephone and left." *Id.* XIV ¶ 7.

In July 2015, Ms. Brasher-Cunningham allegedly became Minister at Guilford FCC, while Mr. Thomas was incarcerated. *Id.* XIV ¶ 4. Allegedly "strongly influenced by" the Co-Minister who allegedly told Mr. Thomas he was "evil," Ms. Brasher-Cunningham allegedly "never took the time to meet with Mr. Thomas to make an independent assessment of" him, and never visited Mr. Thomas even though he "informed [Ms.] Hess that [he] wanted [Ms. Brasher-Cunningham to] visit[]." *Id.* XIV ¶¶ 5, 8. She also allegedly never responded to Mr. Thomas's correspondence seeking spiritual guidance and other assistance during his incarceration. *Id.* XIV ¶ 6.

Ms. Brasher-Cunningham allegedly attended three of Mr. Thomas's court hearings "for the singular purpose to report the outcome of each [h]earing attended to [Ms.] Hess." *Id.* XIV ¶¶ 10, 12–13. Ms. Hess allegedly did not attend Mr. Thomas's hearings. *Id.* XIV ¶ 13.

Since July 24, 2015, Ms. Hess allegedly "has misrepresented facts, situations, and circumstances in regard to the Plaintiff." *Id.* VII ¶ 11.

In November 2016, Ms. Hess "initiated an action for the Dissolution of [their] Marriage." *Id.* III ¶ 5, XIV ¶ 14. Ms. Brasher-Cunningham allegedly accompanied Ms. Hess at each court appearance associated with the marriage dissolution action. *Id.* XIV ¶ 15. Ms. Brasher-Cunningham allegedly ignored Mr. Thomas at each of these hearings, and, "as a result," Mr.

Thomas told Ms. Brasher-Cunningham that he "was not done dealing with the UCC Conference." *Id.* XIV ¶¶ 16–17. Mr. Thomas and Ms. Hess "are still involved in litigation in an attempt to resolve open issues." *Id.* III ¶ 10.

On August 13, 2018, Mr. Thomas allegedly was released from prison. *Id.* XVI ¶ 1.

On March 20, 2019, Ms. Brasher-Cunningham and Mr. Dudley allegedly "served upon [Mr. Thomas] a 'Posting and Prevention of Entry and Warning Against Trespass on Property of First Congregational Church, Inc. of Guilford'" ("the Posting"). *Id.* I ¶ 7. Ms. Brasher-Cunningham and Mr. Dudley allegedly sent the Posting "without authority of any entity and without [a] vote of the Board of Deacons" at Guilford FCC. *Id.* V ¶ 12. Ms. Brasher-Cunningham had allegedly "agreed with [Ms.] Hess to make the Posting to [e]nsure that [Mr. Thomas] would never enter the [ ] Church again." *Id.* XVI ¶ 5.

Ms. Brasher-Cunningham allegedly stated that she "did not trust [Mr. Thomas] and that there was a group of people at [Guilford FCC] who also did not trust" him. *Id.* X ¶ 2.

After the Posting, Ms. Brasher-Cunningham allegedly filed a "false Police Report and a false request for surveillance" against Mr. Thomas. *Id.* II ¶ 7. Jeff Hutchinson, allegedly Chief and Officer in charge of the Guilford PD, *id.* II ¶ 15, "and/or another Officer" of the Guilford PD allegedly then contacted Mr. Thomas's Parole Officer and stated that Mr. Thomas "had done 'nothing wrong,'" First Am. to Compl. ¶ 17. This contact allegedly "provoke[d Mr. Thomas]'s Parole Officer to intervene and insist that [he] not attend" church at Guilford FCC." *Id.* ¶ 19.

The Sunday after the police report was allegedly filed, "the Guilford Police Department [allegedly] dispatched a Police Officer who was stationed outside [Guilford FCC] while the Plaintiff attended the Sunday Service." Compl. II ¶ 9.

5

**B.  Procedural History**

On May 20, 2019, in a separate action, Mr. Thomas filed a complaint against the same

defendants named in this action, in this Court. Compl., *Thomas v. Brasher-Cunningham, et al.*,

3:19-cv-758 (VAB) ("*Thomas I*"), ECF No. 1 (May 20, 2019) ("*Thomas I* Compl.").

On June 4, 2019, Magistrate Judge William I. Garfinkel issued a recommended ruling

dismissing Mr. Thomas's first action. Recommended Ruling, *Thomas I*, ECF No. 8 (June 4,

2019) ("*Thomas I* Recommended Ruling").

On July 31, 2019, Mr. Thomas filed this Complaint against Defendants in Connecticut

Superior Court for the Judicial District of New Haven. Compl.

On December 18, 2019, Defendants removed the case to this Court. Notice of Removal.

On January 6, 2020, the Guilford Police Department moved to consolidate this case with

*Thomas I*. Mot. to Consol. Cases, ECF No. 17 (Jan. 6, 2020). On the same day, however, the

Court adopted Judge Garfinkel's recommended ruling dismissing the case. Order Dismissing

Compl., *Thomas I*, ECF No. 9 (Jan. 6, 2020) ("*Thomas I* Order of Dismissal"). The Court entered

judgment in favor of defendants two days later. Judgment, *Thomas I*, ECF No. 10 (Jan. 8, 2020).

The Court therefore subsequently denied the motion to consolidate as moot. Order, ECF No. 63

(July 2, 2020).

On January 6, 2020, the National UCC filed a motion to dismiss the Complaint for lack

of personal jurisdiction, along with a supporting memorandum of law. National UCC Mot.;

Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 20 (Jan. 6, 2020) ("National UCC Mem.").

National UCC also submitted a return filed by a Connecticut State Marshal in Connecticut

Superior Court detailing efforts to serve Defendants, Ex. A, ECF No. 20 at 7–9 (Jan. 8, 2020).

On January 8, 2020, Guilford FCC Members filed two identical motions to dismiss for lack of personal jurisdiction. Guilford FCC Members Mot. (ECF Nos. 23, 25). In support of their motions, Guilford FCC Members submitted identical memoranda of law. Mem. in Supp. of Mot. to Dismiss, ECF No. 23-1 (Jan. 8, 2020) ("Guilford FCC Members Mem."); Mem. in Supp. of Mot. to Dismiss, ECF No. 25-1 (Jan. 8, 2020) (same). Guilford FCC Members also submitted the same return filed by a Connecticut State Marshal in Connecticut Superior Court detailing his efforts to serve Defendants, Ex. A, ECF No. 23-2 (Jan. 8, 2020) ("Officer's Return"), Ex. A, ECF No. 25-2 (Jan. 8, 2020) (same); and an affidavit from Stephen Dudley, Ex. C, ECF No. 23-4 (Jan. 8, 2020) ("Dudley Aff."); Ex. C, ECF No. 25-4 (Jan. 8, 2020) (same).[3]

On January 8, 2020, Mr. Thomas filed an "Amendment to Complaint as a Matter of Course," amending paragraphs 17 through 30 of the allegations in his Complaint. Am. to Compl., ECF No. 26 (Jan. 8, 2020) ("First Am. to Compl.").

On January 24, 2020, Individual Defendants and Church Defendants jointly moved to dismiss for lack of subject matter jurisdiction and failure to state a claim. Individual & Church Defs.' Mot. In support of their motion, Individual and Church Defendants filed a memorandum of law, Mem. of Law in Supp. of Mot. to Dismiss, ECF No. 34 (Jan. 24, 2020) ("Individual & Church Defs.' Mem."). They also filed a copy of Mr. Thomas's complaint and the recommended ruling of dismissal in *Thomas I*. Ex. A—*Thomas I* Compl., ECF No. 34-1 (Jan. 24, 2020); Ex. B—*Thomas I* Recommended Ruling, ECF No. 34-2 (Jan. 24, 2020).

On January 24, 2020, the Guilford Police Department moved to dismiss Mr. Thomas's Complaint for failure to state a claim. Guilford PD Mot.; Mem. in Supp. of Mot. to Dismiss, ECF No. 35-1 (Jan. 24, 2020) ("Guilford PD Mem.").

---

[3] The Court will cite to Guilford FCC Members' filings at ECF No. 23 in this ruling for clarity and consistency.

On February 7, 2020, Mr. Thomas filed a motion to remand the case to Connecticut Superior Court. Mot. to Remand.

On February 10, 2020, Mr. Thomas filed a motion to amend his Complaint to add additional defendants and allegations as to those proposed defendants. Mot. to Amend; Proposed Second Am. to Compl., ECF No. 47-1 (Feb. 10, 2020).

On February 18, 2020, Mr. Thomas filed a second objection to Guilford FCC Members' motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 56 (Feb. 18, 2020) ("Pl.'s Obj. to Guilford FCC Members").[4]

On February 18, 2020, Mr. Thomas also filed an objection to National UCC's motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 57 (Feb. 18, 2020) ("Pl.'s Obj. to National UCC").[5]

On February 18, 2020, Mr. Thomas also filed an objection to the Guilford Police Department's motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 58 (Feb. 18, 2020) ("Pl.'s Obj. to Guilford PD").

On February 26, 2020, the Guilford Police Department filed an objection to Mr. Thomas's motion to amend, Obj. to Mot. to Amend, ECF No. 59 (Feb. 26, 2020) ("Guilford PD Obj. to Mot. to Amend"); and a reply in response to Plaintiff's objection to its motion to dismiss, Reply, ECF No. 61 (Feb. 26, 2020) ("Guilford PD Reply"). In support of its reply, Guilford Police Department submitted a copy of Chapter 3 of the Charter for the Town of Guilford. Ex. A,

---

[4] Mr. Thomas filed an earlier objection to Guilford FCC Members' motion to dismiss. Obj. to Mot. to Dismiss, ECF No. 41 (Feb. 7, 2020). Because his objection at ECF No. 56 duplicates his earlier objection and adds several additional paragraphs, the Court will cite to his objection at ECF No. 56.

[5] Mr. Thomas had earlier filed two objections to National UCC's motion to dismiss which were identical to each other. Obj. to Mot. to Dismiss, ECF No. 29 (Jan. 13, 2020); Obj. to Mot. to Dismiss, ECF No. 40 (Feb. 7, 2020). Because his objection at ECF No. 57 duplicates these earlier objections, but adds two additional paragraphs, the Court will cite to his objection at ECF No. 57.

ECF No. 61-1 (Feb. 26, 2020) (Chapter C: Charter, Town of Guilford (Nov. 4, 2019)) ("Guilford Town Charter").

On February 26, 2020, Guilford FCC Members filed a reply in response to Plaintiff's objection to their motion to dismiss. Reply, ECF No. 60 (Feb. 26, 2020) ("Guilford FCC Members' Reply"). In support of their motion, they again submitted Mr. Dudley's affidavit, Ex. A—Dudley Aff., ECF No. 60-1 (Feb. 26, 2020); along with Guilford FCC's bylaws, Ex. B, ECF No. 60-2 (Feb. 26, 2020) (By-laws, The First Congregational Church of Guilford, Connecticut (last rev. Feb. 1, 2015)) ("Guilford FCC Bylaws").

On March 2, 2020, the Individual Defendants and Church Defendants jointly filed an objection to Mr. Thomas's motion to amend. Obj. to Mot. to Amend, ECF No. 62 (Mar. 2, 2020) ("Individual & Church Defs.' Obj. to Mot. to Amend").

On July 23, 2020, the Court held a hearing by videoconference on the pending motions to dismiss, National UCC Mot; Guilford FCC Members Mot.; Individual & Church Defs.' Mot.; Guilford PD Mot.; the motion to amend the Complaint, Pl.'s Mot. to Amend; and the motion to remand, Mot. to Remand. Minute Entry, ECF No. 66 (July 23, 2020). During the hearing, Mr. Thomas moved orally to dismiss all claims against the Guilford Police Department, National UCC, and Guilford FCC Members. Oral Motion, ECF No. 67 (July 23, 2020).

## II.   STANDARDS OF REVIEW

### A.  Rule 12(b)(1) Motions to Dismiss

A motion to dismiss under Rule 12(b)(1) of the Federal Rules of Civil Procedure raises the issue of subject matter jurisdiction. In order for a court to exercise subject matter jurisdiction, either (1) the plaintiff must set forth a colorable claim arising under the U.S. Constitution or a federal statute, thus invoking this Court's federal question jurisdiction under 28 U.S.C. § 1331;

or (2) there must be complete diversity of citizenship between the plaintiff and the defendant and the amount in controversy must exceed $75,000 under 28 U.S.C. § 1332. *See DaSilva v. Kinsho Int'l Corp.*, 229 F.3d 358, 363 (2d Cir. 2000) (identifying and discussing the two categories of subject matter jurisdiction). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3). Thus, where jurisdiction is lacking, dismissal is mandatory. *Lydonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700–01 (2d Cir. 2000); *Manway Constr. Co. v. Hous. Auth. of Hartford*, 711 F.2d 501, 503 (2d Cir. 1983).

Under Federal Rule of Civil Procedure 12(b)(1), the facts alleged in the complaint are viewed in the light most favorable to the plaintiff and all reasonable inferences must be drawn in the plaintiff's favor. *Nat. Res. Def. Council v. Johnson*, 461 F.3d 164, 171 (2d Cir. 2006) ("When reviewing a district court's Rule 12(b)(1) determination of its subject matter jurisdiction, we review factual findings for clear error and legal conclusions de novo. . . . Moreover[,] the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." (internal quotations and citations omitted)).

"On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits." *Karlen ex rel. J.K. v. Westport Bd. of Educ.*, 638 F. Supp. 2d 293, 298 (D. Conn. 2009).

**B. Rule 12(b)(2) Motions to Dismiss**

On a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the "plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 206 (2d Cir. 2003).

Where, as here, the parties have not engaged in discovery on the jurisdictional question, the plaintiff need only make a *prima facie* showing that jurisdiction exists. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59 (2d Cir. 2012); *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) ("Where a 'court [has chosen] not to conduct a full-blown evidentiary hearing on the motion, the plaintiff need make only a *prima facie* showing of jurisdiction through its own affidavits and supporting materials.'") (quoting *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981)).

"The prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Licci ex rel. Licci*, 673 F.3d at 59; *see also Glenwood Sys., LLC v. Med-Pro Ideal Sols., Inc.*, No. 3:09-cv-956 (WWE), 2010 WL 11527383, at *2 (D. Conn. May 4, 2010) ("At this stage of the proceedings, if the court relies upon pleadings and affidavits, the plaintiff must make out only a prima facie showing of personal jurisdiction, and the affidavits and pleadings should be construed most favorably to the plaintiff."), *aff'd*, 438 F. App'x 27 (2d Cir. 2011), as amended (Sept. 23, 2011) (citing *CutCo Industries, Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986) ). A court considers the facts as they existed when the plaintiff filed the complaint. *See id.* (citing *Klinghoffer v. S.N.C. Achille Lauro Ed Altri-Gestione Motonave Achille Lauro in Amministrazione Straordinaria*, 937 F.2d 44, 52 (2d Cir. 1991)).

### C. Rule 12(b)(5) Motions to Dismiss

A motion to dismiss under Federal Rule of Civil procedure 12(b)(5) due to insufficient service of process "must be granted if the plaintiff fails to serve a copy of the summons and complaint on the defendants pursuant to Rule 4 of the Federal Rules [of Civil Procedure], which sets forth the federal requirements for service." *Rzayeva v. United States*, 492 F. Supp. 2d 60, 74

(D. Conn. 2007) (internal citation omitted); *see* Fed. R. Civ. P. 12(b)(5). "Once validity of service has been challenged, it becomes the plaintiff's burden to prove that service of process was adequate." *Cole v. Aetna Life & Cas.*, 70 F. Supp. 2d 106, 110 (D. Conn. 1999).

### D.  Rule 12(b)(6) Motions to Dismiss

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). Any claim that fails "to state a claim upon which relief can be granted" will be dismissed. Fed. R. Civ. P. 12(b)(6). In reviewing a complaint under Rule 12(b)(6), a court applies a "plausibility standard" guided by "two working principles." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

First, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations . . . a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." (internal citations omitted)). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679. Thus, the complaint must contain "factual amplification . . . to render a claim plausible." *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (quoting *Turkmen v. Ashcroft*, 589 F.3d 542, 546 (2d Cir. 2009)).

When reviewing a complaint under Federal Rule of Civil Procedure 12(b)(6), the court takes all factual allegations in the complaint as true. *Iqbal*, 556 U.S. at 678. The court also views the allegations in the light most favorable to the plaintiff and draws all inferences in the plaintiff's favor. *Cohen v. S.A.C. Trading Corp.*, 711 F.3d 353, 359 (2d Cir. 2013); *see also York*

*v. Ass'n of the Bar of the City of N.Y.*, 286 F.3d 122, 125 (2d Cir. 2002) ("On a motion to dismiss for failure to state a claim, we construe the complaint in the light most favorable to the plaintiff, accepting the complaint's allegations as true.")).

A court considering a motion to dismiss under Rule 12(b)(6) generally limits its review "to the facts as asserted within the four corners of the complaint, the documents attached to the complaint as exhibits, and any documents incorporated in the complaint by reference." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 191 (2d Cir. 2007). A court may also consider "matters of which judicial notice may be taken" and "documents either in plaintiffs' possession or of which plaintiffs had knowledge and relied on in bringing suit." *Brass v. Am. Film Techs., Inc.*, 987 F.2d 142, 150 (2d Cir. 1993); *Patrowicz v. Transamerica HomeFirst, Inc.*, 359 F. Supp. 2d 140, 144 (D. Conn. 2005).

Complaints filed by *pro se* plaintiffs "must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Sykes v. Bank of Am.*, 723 F.3d 399, 403 (2d Cir. 2013) (quoting *Triestman v. Fed. Bureau of Prisons*, 470 F. 3d 471, 474 (2d Cir. 2006)) (internal quotation marks omitted); *see also Tracy v. Freshwater*, 623 F. 3d 90, 101–02 (2d Cir. 2010) (discussing the "special solicitude" courts afford *pro se* litigants).

### E.  Rule 15 Motions to Amend the Complaint

Rule 15 of the Federal Rules of Civil Procedure provides that a party may either amend once as a matter of course within 21 days of service or the earlier of 21 days after service of a required responsive pleading or motion under Rule 12 (b), (e) or (f). Fed. R. Civ. P. 15(a)(1). Once that time has elapsed, a party may move for leave to file an amended complaint. Fed. R. Civ. P. 15(a)(2). The "court should freely give leave when justice so requires." *Id.*

The decision to grant leave to amend under Fed. R. Civ. P. 15 is within the discretion of the court, but the court must give some "justifying reason" for denying leave. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Reasons for denying leave to amend include "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc[.]" *Id.*; *see also Lucente v. Int'l Bus. Machines Corp.*, 310 F.3d 243, 258 (2d Cir. 2002) (noting leave to amend may be denied when amendment is "unlikely to be productive," such as when an amendment is "futile" and "could not withstand a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6)." (internal citations omitted)).

### F.  Motions to Remand

A district court will remand a case "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction." 28 U.S.C. § 1447(c). "[T]he party asserting jurisdiction bear the burden of proving that the case is properly in federal court[.]" *United Food & Commercial Workers Union, Local 919, AFL-CIO v. CenterMark Properties Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994). The party asserting jurisdiction "must support its asserted jurisdictional facts with 'competent proof' and 'justify its allegations by a preponderance of the evidence.' " *Southern Air, Inc. v. Chartis Aerospace Adjustment Servs., Inc.*, 2012 WL 162369, at *1 (D. Conn. 2012) (quoting *United Food & Commercial Workers Union*, 30 F.3d at 305). "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994).

### III.   DISCUSSION

Mr. Thomas has alleged multiple claims against various Defendants, organized into twenty-one counts. Mr. Thomas asserts together allegations that Defendants violated Article I Section 3 of the Connecticut Constitution, Conn. Gen. Stat. § 52-237, 28 U.S.C. § 4101, and his First and Fourteenth Amendment rights under 42 U.S.C. § 1983. *See* Compl. I ¶¶ 11–13, III ¶ 13, IV ¶ 28, V ¶ 12, VI ¶ 4, VII ¶ 14, VIII ¶ 6, X ¶¶ 1–2, XI ¶¶ 1–2, XII ¶ 3, XIII ¶ 3, XIV ¶ 18, XV ¶ 4, XVI ¶ 6, XVIII ¶¶ 3, 5, XIX ¶ 3, XX ¶ 8; *see also* First Am. to Compl. ¶¶ 22–29.

Mr. Thomas also asserts together state common law allegations of libel, slander, and defamation. Compl. I ¶ 19, II ¶ 14, III ¶¶ 9, 11–12, IV ¶ 27, V ¶ 12, VI ¶ 4, VII ¶ 14, VIII ¶ 6, IX ¶ 4, X ¶¶ 1–2, XI ¶¶ 1–2, XII ¶ 2, XIII ¶ 3, XV ¶ 4, XVI ¶ 6, XVIII ¶¶ 3, 5, XIX ¶ 3, XX ¶ 8; *see also* First Am. to Compl. ¶¶ 20.

Mr. Thomas also alleges fraud. Compl. IV ¶ 26; XVII ¶ 4. Finally, he alleges that Guilford FCC Members "are individually and collectively vicariously liable for the acts of" the Individual Defendants. *Id.* XXI ¶ 4.

Mr. Thomas seeks $2.5 million in damages, compensatory damages, treble damages, and attorney's fees and costs. Compl. at 30. He also seeks injunctive relief, an order terminating Ms. Brasher-Cunningham as Minister, requiring removal of the Posting, and requiring a written apology. *Id.*

#### A.   Plaintiff's Oral Motions to Dismiss Defendants

Mr. Thomas has orally moved to dismiss his claims against the Guilford Police Department, National UCC, and Guilford FCC Members. *See* Oral Motion.

Under Federal Rule of Civil Procedure 41, a "plaintiff may dismiss an action without a court order by filing . . . a notice of dismissal before the opposing party serves either an answer

or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). Mr. Thomas has orally moved, and he has not filed a formal notice of dismissal. But the Court will grant his motion and dismiss these parties. *Cf. Tracy*, 623 F. 3d at 101–02 (discussing the "special solicitude" courts afford *pro se* litigants). As discussed below, these parties would have to be dismissed from this lawsuit in any event.

### B.  Res Judicata

Because this Court has already ruled that the Court lacks subject matter jurisdiction over an essentially identical Complaint filed by Mr. Thomas against these same Defendants, *see Thomas I* Recommended Ruling; *Thomas I* Order of Dismissal, this entire action is barred by *res judicata*. *See Corbett v. MacDonald Moving Servs., Inc.*, 124 F.3d 82, 88 (2d Cir. 1997) ("After a Federal court has decided the question of the jurisdiction over the parties as a contested issue, the court in which the plea of *res judicata* is made has not the power to inquire again into that jurisdictional fact." (quoting *Stoll v. Gottlieb*, 305 U.S. 165, 172 (1938) (internal quotation marks omitted)); *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 (1982) ("It has long been the rule that principles of *res judicata* apply to jurisdictional determinations— both subject matter and personal." (internal citations omitted)).[6]

### C.  Subject Matter Jurisdiction

Even if the doctrine of *res judicata* does not apply to dismiss Mr. Thomas's claims, this Court lacks subject-matter jurisdiction over them.

---

[6] Only one Defendant, the Guilford Police Department, raises the argument that this action is barred by *res judicata*. Guilford Police Department argues that Mr. Thomas's claims under Section 1983 should be dismissed "because it is substantially identical to Count Two of [Mr. Thomas]'s prior pending action" against it, wherein Magistrate Judge Garfinkel issued a recommended ruling dismissing Mr. Thomas's complaint in its entirety, which this Court adopted. Guilford PD Mem. at 6–8. Mr. Thomas argues in reply that "res judicata does not apply as the previous action . . . was dismissed for lack of [d]iversity and not dismissed on its merits." Pl.'s Obj. to GPD ¶ 6. For the reasons discussed below, the Court agrees with Guilford Police Department and indeed finds that *res judicata* bars this entire action.

"[S]ubject-matter jurisdiction, because it involves a court's power to hear a case, can never be forfeited or waived." *United States v. Cotton*, 535 U.S. 625, 630 (2002). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety. . . . In contrast, when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

> Although the Supreme Court has cautioned against eliminating the distinction between failing to raise a substantial federal question for jurisdictional purposes . . . and failing to state a claim for relief on the merits, the Supreme Court has also instructed that federal question jurisdiction under 28 U.S.C. § 1331 is lacking where the asserted claim for relief is essentially fictitious, wholly insubstantial, obviously frivolous, and obviously without merit.

*Hariprasad v. Master Holdings Inc.*, 788 F. App'x 783, 786 (2d Cir. 2019) (quoting *Shapiro v. McManus*, 136 S. Ct. 450, 455–56 (2015)) (internal quotation marks omitted); *see also Arbaugh*, 546 U.S. at 513 ("A claim invoking federal-question jurisdiction under 28 U.S.C. § 1331 . . . may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.,* if it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or is 'wholly insubstantial and frivolous.'" (quoting *Bell v. Hood*, 327 U.S. 678, 682–83 (1946))).

The Individual and Church Defendants argue that Mr. Thomas's Complaint should be dismissed for lack of subject matter jurisdiction "due to a lack of diversity and/or the lack of a colorable claim arising under the U.S. Constitution or a federal statute." Individual & Church Defs.' Mem. at 7–8.

The Court agrees.

All Defendants, with the exception of National UCC, are residents of Connecticut. Because there is not complete diversity between Mr. Thomas and all Defendants, the Court lacks diversity jurisdiction over this action. *See St. Paul Fire & Marine Ins. Co. v. Universal Builders Supply*, 409 F.3d 73, 80 (2d Cir. 2005) ("Diversity is not complete if any plaintiff is a citizen of the same state as any defendant." (citing *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 (1978)); *Handelsman v. Bedford Village Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000) ("Diversity jurisdiction requires that 'all of the adverse parties in a suit . . . be completely diverse with regard to citizenship.'" (quoting *E.R. Squibb & Sons, Inc. v. Accident & Cas. Ins. Co.*, 160 F.3d 925, 930 (2d Cir. 1998))).

In the absence of complete diversity, to assert subject matter jurisdiction over this action, Mr. Thomas must have a colorable claim arising under the U.S. Constitution or a federal statute. *See DaSilva*, 229 F.3d at 363 ("The clearest case for considering an issue to concern subject matter jurisdiction is one requiring determination as to whether the federal question or the diversity jurisdiction of a district court is properly invoked") (citing 28 U.S.C. § 1331); *see id.* (further defining a federal question as "whether a plaintiff has pleaded a colorable claim 'arising' under the Constitution or laws of the United States") (citations omitted)). He has not done so.

Mr. Thomas has alleged two sets of federal claims: violations of 28 U.S.C. § 4101, and violations of his First and Fourteenth Amendment rights under 42 U.S.C. § 1983.

But 28 U.S.C. § 1401 does not create a cause of action. This provision contains definitions, including a definition of "defamation," in the context of a statute that allows for actions recognizing foreign defamation judgments. *See* 28 U.S.C. § 4102(a) ("Notwithstanding any other provision of Federal or State law, a domestic court shall not recognize or enforce a foreign judgment for defamation unless the domestic court determines that—(A) the defamation

18

law applied in the foreign court's adjudication provided at least as much protection for freedom

of speech and press in that case as would be provided by the [F]irst [A]mendment to the

Constitution of the United States . . . ."). "Although the tort of defamation is a well-recognized

cause of action under state common law, federal law does not create a general cause of action or

provide a basis for federal question jurisdiction for defamation." *Steffens v. Kaminsky*, No. 3:20-

cv-737 (JAM), 2020 WL 2850605, at *2 (D. Conn. June 2, 2020) (citing *Siegert v. Gilley*, 500

U.S. 226, 233–34 (1991); *McMillan v. Togus Regional Office, Dep't of Veterans Affairs*, 120 F.

App'x 849, 852 (2d Cir. 2005)). "This statute [therefore] does not create federal question

jurisdiction or a general federal cause of action for defamation occurring within the United

States." *Id.* (citing *Renxiong Huang v. Minghui.org*, No. 17 Civ. 5582 (ER), 2018 WL 3579103,

at *5 (S.D.N.Y. 2018)); *see also Lawrence v. Altice USA*, No. 3:18-cv-1927 (SRU), 2020 WL

108980, at *3 n.1 (D. Conn. Jan. 9, 2020) ("[Plaintiff] initially pled jurisdiction under 28 U.S.C.

§ 4101, which merely defines 'defamation' for the purposes of recognizing foreign judgments

and is not a basis for federal court subject matter jurisdiction.").

The alleged violations of his First and Fourteenth Amendment rights also do not result in

a colorable claim under 42 U.S.C. § 1983 ("Section 1983"). In the recommended ruling adopted

by the Court, which dismissed essentially identical claims, Magistrate Judge Garfinkel found that

Mr. Thomas could not assert colorable federal claims against any of the Defendants. *Thomas I*

Recommended Ruling at 3 (citing *DaSilva*, 229 F.3d at 363). Mr. Thomas's Section 1983 claims

against Guilford FCC, Guilford FCC Members, the Connecticut UCC, and all Individual

Defendants were not colorable because none of these Defendants was a state entity or official

subject to suit under Section 1983, or otherwise acted under color of state law. *Id.* at 3–4 ("To act

under color of law for purposes of Section 1983, 'the defendant must have exercised power

possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" (quoting *Monsky v. Moraghan*, 127 F.3d 243, 245 (2d Cir. 1997))).

Mr. Thomas also did not have a colorable claim against the National UCC because his claims were based entirely on its vicarious liability for Ms. Brasher-Cunningham's alleged actions, which had already been dismissed. *Id.* at 4–5 ("Since, as discussed above, there are no viable claims against [Ms.] Brasher-Cunningham, there can be no vicarious liability.").

Finally, Mr. Thomas's claims against Guilford Police Department in *Thomas I* were not colorable because "municipal police departments are not independent legal entities and are not subject to suit under Section 1983, except under circumstances inapplicable here." *Id.* at 5 (citing *Nicholson v. Lenczewski*, 356 F. Supp. 2d 157, 164 (D. Conn. 2005)).

The same reasoning applies with equal force here to this case. None of the Individual or Church Defendants are state actors or took actions "clothed with the authority of state law." *Monsky*, 127 F.3d 243 at 245. When allegations pertain to actions not taken under color of state law, "they may not form the basis of a claim under § 1983." *Carlos v. Santos*, 123 F.3d 61, 66 (2d Cir. 1997). As in his complaint in *Thomas I*, Mr. Thomas's allegations against National UCC also are based on its alleged vicarious liability for some of the Individual Defendants' actions. As in *Thomas I*, his alleged claims against National UCC must also be dismissed because his claims against the Individual Defendants are not colorable.

Mr. Thomas's allegations against the Guilford Police Department also are not colorable for the reason articulated by Magistrate Judge Garfinkel in *Thomas I*: "[M]unicipal police departments are not independent legal entities and are not subject to suit under Section 1983, except under circumstances inapplicable here." *Thomas I* Recommended Ruling at 5.

Mr. Thomas argues that the Guilford Police Department "is not listed in the Town of Guilford Charter, is not controlled by the Town of Guilford, and is a separate entity which can be sued." Pl.'s Obj. to Guilford PD ¶ 5. The Guilford Police Department argues in reply, however, that no legal authority supports Mr. Thomas's position and reiterates that "a municipal police department . . . is not a municipality nor a 'person' within the meaning of [S]ection 1983." Guilford PD Reply at 1–2 (quoting *Nicholson*, 356 F. Supp. 2d at 163–64). The Guilford Police Department also argues that Mr. Thomas misrepresents the contents of the Guilford Town Charter, which they assert does establish a Police Department, to be managed by the Board of Police Commissioners which is in turn "under the general supervision of the Board of Selectmen." *Id.* at 5 (internal quotation marks omitted). Finally, they argue that, in any event, Mr. Thomas "has no constitutionally protected right to a proper investigation" and "has not alleged that he was subjected to any contact or interference that would even approach an infringement of his constitutional rights." *Id.* at 7.

The Court agrees with the Guilford Police Department.

As an initial matter, Mr. Thomas has not referenced the Town Charter in his Complaint nor pleaded any allegations suggesting that the Guilford Police Department is a separate entity that may be subject to suit under Section 1983. He cannot amend his Complaint by asserting new allegations in his objection to the motion to dismiss. *See Aldrich v. Town of Bloomfield*, No. 3:17-cv-00581 (VLB), 2018 WL 1015337, at *4 (D. Conn. Feb. 22, 2018) ("Plaintiff cannot amend her complaint with assertions contained in an objection to a motion to dismiss." (internal citations omitted)); *Miley v. Hous. Auth. of City of Bridgeport*, 926 F. Supp. 2d 420, 432 (D. Conn. 2013) ("It is well established that plaintiffs cannot amend their complaint by asserting new

facts or theories for the first time in opposition to [d]efendants' motion to dismiss." (internal citations, quotation marks, and alterations omitted)).

In any event, the Town Charter is not relevant to whether the Guilford Police Department may be sued under Section 1983. "In determining whether a municipal subdivision constitutes a separate body politic, courts have looked to whether a specific statute enables the entity to sue or be sued," and "have found the absence of a specific enabling statute to be dispositive in determining that a municipal body is not a distinct body politic." *Watrous v. Town of Preston*, 902 F. Supp. 2d 243, 256 (D. Conn. 2012). As another court in this District recently observed, "Connecticut statutes 'contain no provision establishing municipal departments, including police departments, as legal entities separate and apart from the municipality they serve, or providing that they have the capacity to sue or be sued. Rather, it is the municipality itself which possesses the capacity to sue and be sued.'" *Santiago v. Hamden Conn. Police Dep't*, No. 3:19-cv-1659 (KAD), 2019 WL 6497003, at *4 (D. Conn. Dec. 3, 2019) (quoting *Rose v. City of Waterbury*, No. 3:12-cv-291 (VLB), 2013 WL 1187049, at *9 (D. Conn. Mar. 21, 2013)) (internal alterations omitted).

As a result, Mr. Thomas has not and cannot allege a colorable claim under Section 1983 against the Guilford Police Department.

Accordingly, because Mr. Thomas has not alleged a colorable claim under federal law against any of the Defendants, the Court must again dismiss his Complaint for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

### D.  Personal Jurisdiction

Even if this Court had subject matter jurisdiction over this case, the Court lacks personal jurisdiction over the National UCC and the Guilford FCC Members and the claims against them would have to be dismissed.

Three requirements must be satisfied for a court to exercise personal jurisdiction over a defendant. "First, the plaintiff's service of process upon the defendant must have been procedurally proper." *Licci ex rel. Licci*, 673 F.3d at 59. "Second, there must be a statutory basis for personal jurisdiction that renders such service of process effective," which, in federal courts, is Federal Rule of Civil Procedure 4 ("Rule 4"). *Id.* "Third, the exercise of personal jurisdiction must comport with constitutional due process principles." *Id.* at 60. The Due Process Clause inquiry requires courts to consider "whether the defendant has sufficient contacts with the forum state to justify the court's exercise of personal jurisdiction" and "whether the assertion of personal jurisdiction comports with 'traditional notions of fair play and substantial justice'—that is, whether it is reasonable to exercise personal jurisdiction under the circumstances of the particular case." *Id.* (internal citation and quotation marks omitted).

Under Rule 4, a plaintiff may effectuate service by "delivering a copy of the summons and of the complaint to the individual personally;" leaving a copy of the summons and complaint "at the individuals' dwelling or usual place of abode"; or delivering a copy of the summons and complaint "to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e)(2). Service may also be proper if executed in accordance with state law where the district court is located or where service is made. Fed. R. Civ. P. 4(e)(1).

Under Connecticut law, "process in any civil action shall be served by leaving a true and attested copy of it, including the declaration or complaint, with the defendant, or at his usual place of abode, in this state." Conn. Gen. Stat. § 52-57(a).

 **i. National UCC**

National UCC argues that Mr. Thomas failed to adequately serve process on it and that this Court therefore lacks personal jurisdiction over it. National UCC Mem. at 3–4.

Mr. Thomas argues that, even though the Connecticut State Marshal was unsuccessful in serving National UCC, because counsel entered appearance on behalf of these defendants, counsel "represented to the Court that [they were] in fact properly served and [ ] acting as [ ] Defendant[s]." Pl.'s Obj. to National UCC ¶ 2, 5. Mr. Thomas argues in the alternative that, "as the matter is now in Federal Court" after having been removed, "the Plaintiff has ninety (90) days in which to serve the Defendant[s] . . . pursuant to Rule 4(m) and will do so if Ordered by the Court." Pl.'s Obj. to National UCC ¶ 8.

The Court disagrees.

A defendant does not waive its right to move for dismissal based on improper service by filing a motion to dismiss. *See, e.g.*, *Sun v. Mashantucket Pequot Gaming Enter.*, 309 F.R.D. 157, 165 (D. Conn. 2015) (holding that where defendants "raised their lack of personal jurisdiction/insufficiency of service of process defense in their Motion to Dismiss, which was the first responsive pleading they filed with the court," they "did not waive the right to assert this defense"); *see also* Fed. R. Civ. P. 12(h)(1) (listing circumstances under which a party waives an insufficient service of process defense, which do not include entering an appearance or filing a motion to dismiss).

Because National UCC raised its insufficient service of process defense in its first response to the Complaint, a motion to dismiss, it has not waived the defense.

The Connecticut State Marshal states that, "[h]aving no Corporate Authority or Existence in the State of CT, I was unable to make due and legal service on the within named defendant, the National Conference of the United Church of Christ." Officer's Return. Although a court "must extend the time for service for an appropriate period" if "the plaintiff shows good cause for the failure" under Rule 4(m), Mr. Thomas has not shown good cause. Indeed, he has not even made any allegations as to why National UCC has not been served.

Accordingly, because Mr. Thomas failed to serve process on National UCC without showing good cause, the Court would have to dismiss Mr. Thomas's claims against National UCC for lack of personal jurisdiction.

### ii.  Guilford FCC Members

Guilford FCC Members argue that Mr. Thomas failed to adequately serve process on them and that this Court therefore lacks personal jurisdiction over them. Guilford FCC Members Mem. at 1–3. They also argue that "'All Members of the First Congregational Church of Guilford' is not a recognized entity nor is it a voluntary association," *id.* at 3, and therefore cannot be named or served as a defendant in any event, *id.* at 6. They argue that they are not a voluntary association because they "do[] not have any organizational structure" or "any officers or directors," *id.* at 9, and if Mr. Thomas "wanted to serve all of the members of the First Congregational Church of Guilford, he should have served each member of the church individually," *id.* at 6.

Mr. Thomas argues that Guilford FCC Members are, in fact, a voluntary association, citing to Guilford FCC's bylaws, which state that "[a]ll members are entitled to vote," and that

25

"final authority rests with the congregation." Pl.'s Obj. to Guilford FCC Members ¶¶ 2, 6–7. He

also refers to "[t]he Original Pilgrim Church Publication 'The Art and Practice of the

Congregational Way,' Belief Number 5," which allegedly states that "Congregational Church

Christians believe in democratic and representative decision making within the Church" and that

"[m]ember consent is required for all decisions." *Id.* ¶ 5. In his view, because "there are no

Officers listed with the Secretary of the State's Office for service to be made upon," the

Connecticut State Marshal "was successful in serving [Guilford FCC Members] pursuant to

[Conn. Gen. Stat. § 52-57(e) by making service upon the Secretary of State . . . ." *Id.* ¶ 2. He also

argues, as he did with National UCC, that Guilford FCC Members demonstrated that they were

served by entering an appearance and filing a motion to dismiss. *Id.* ¶¶ 10–4. He also again

requests 90 additional days to serve Guilford FCC Members if the Court finds they have not yet

been served. *Id.* ¶ 7.

Guilford FCC Members argue in reply that the portions of Guilford FCC's bylaws quoted

by Mr. Thomas are taken out of context, and that both the bylaws and the historic document

quoted by Mr. Thomas are irrelevant to service of process. Guilford FCC Members' Reply at 3.

They contend that one of these portions pertains specifically to decisions made at Special Church

Meetings, and the other to actions taken by the Church Council. *Id.* at 3–4.

Guilford FCC Members argue further that Mr. Thomas's service upon the Secretary of

State "does not accomplish anything." *Id.* at 2.

> Since the entity which [Mr. Thomas] refers to as "All Members of
> First Congregational Church of Guilford" does not exist, it would
> not be registered with the Secretary of State's office. As a result, the
> Secretary of State's office would not have any information on any
> of the members of the Church. Consequently, the Secretary of
> State's office would not be able to forward copies of the Complaint
> to any of the individual members.

*Id.*

The Court agrees.

Under Connecticut law, "[a]ny number of persons associated together as a voluntary association, not having corporate powers, but known by a distinguishing name, may sue and be sued and plead and be impleaded by such name." Conn. Gen. Stat. § 52-76. Service may be made against a voluntary association by serving process "upon the presiding officer, secretary or treasurer." Conn. Gen. Stat. § 52-57(e).

> If all of such officers are not residents of the state and the voluntary association is doing business, acting or carrying out its operations or its functions within the state, the voluntary association shall be deemed to have appointed the Secretary of the State as its attorney and to have agreed that any process in any civil action brought against it may be served upon the Secretary of the State and that the process shall have the same validity as if served personally upon the presiding officer, secretary or treasurer of the voluntary association.

*Id.*

The Connecticut State Marshal states that, on November 26, 2019, "and by special direction of the plaintiff, I made due and legal service on the within named All Members of the First Congregational Church of Guilford, by leaving a verified true and attested copy of the" summons and complaint, "in accordance with [Conn. Gen. Stat. § 52-57(e)], at the office of the Secretary of the State, Statutory Agent for Service for All Members of the First Congregational Church of Guilford." Officer's Return.

But Mr. Thomas has not pleaded, nor does the evidence before the Court suggest, that "All Members of First Congregational Church of Guilford" is a "voluntary association . . . known by a distinguishing name" which may be sued. Indeed, Mr. Dudley, Chair of the Church Council of Guilford FCC stated in his affidavit that "[a]t no time has there been an entity, organization[,] or association known as 'All Members of the First Congregational Church of

27

Guilford' which was or is, in any way, affiliated or associated with the First Congregational Church of Guilford." Dudley Aff. ¶ 8.

In any event, even if he could show that Guilford FCC Members were a voluntary association, service upon the Secretary of State would be insufficient. Under Connecticut law, the Secretary of the State is only deemed the proper recipient of service on behalf of a voluntary association where the officers of such voluntary association "are not residents of the state and the voluntary association is doing business, acting or carrying out its operations or its functions within the state." Conn. Gen. Stat. § 52-57(e). Here, Guilford FCC Members appear to reside entirely within the state of Connecticut, as they are all allegedly members of a local church in Guilford, Connecticut.

As a result, Mr. Thomas may only effectuate service by identifying and serving "the presiding officer, secretary or treasurer" of the alleged voluntary association. Moreover, it would not comport with due process principles to exercise personal jurisdiction over every individual member of Guilford FCC, which "had approximately 820 registered members" in 2019. Dudley Aff. ¶ 5. There is no allegation nor evidence that service of process to the Secretary of State, who has no contact information for Guilford FCC Members as an alleged voluntary association nor for any individual member, would adequately provide these members with notice of any action against them.

Accordingly, the Court does not have personal jurisdiction over the Guilford FCC Members. Once again, Mr. Thomas has not shown good cause as to why Guilford FCC Members have not been properly served. The Court therefore would not grant an extension of time to serve Defendants, even if the Court had subject matter jurisdiction over this action.

### E.  Failure to State a Claim

Because this action is barred by *res judicata*, and the Court lacks subject matter jurisdiction over the action in any event, the Court need not and will not address Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

### F.  Motion to Amend

"[A] motion for leave to amend a complaint may be denied when amendment would be futile." *Tocker v. Phillip Morris Cos., Inc.*, 470 F.3d 481, 491 (2d Cir. 2006) (citing *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003)); *see also Kim v. Kimm*, 884 F.3d 98, 105–06 (2d Cir. 2018) ("Therefore, because the proposed amendments would have no impact on the basis for the district court's dismissal and would consequently be futile, the district court did not abuse its discretion in denying [plaintiff] leave to amend." (citing *Ellis*, 336 F.3d at 127)).

Although a *pro se* plaintiff's pleadings "must be construed liberally and interpreted to raise the strongest arguments that they suggest," *Sykes*, 723 F.3d at 403, "where there is no indication that a valid claim might be stated after a liberal reading of a *pro se* plaintiff's complaint, the Court need not grant leave to amend," *Santos v. Eye Physicians & Surgeons, P.C.*, No. 3:18-cv-1515 (VAB), 2019 WL 3282950, at *11 (D. Conn. July 22, 2019) (citing *Ruffolo v. Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993)).

Mr. Thomas seeks to amend his Complaint to add additional individual defendants and allegations as to those proposed defendants. Mot. to Amend; Proposed Second Am. to Compl.

The Guilford Police Department and the Individual and Church Defendants object to the motion to amend, arguing that Mr. Thomas's proposed amendments are futile. Guilford PD Obj. to Mot. to Amend; Individual & Church Defs.' Obj. to Mot. to Amend.

The Court agrees.

Mr. Thomas seeks to add claims of defamation, libel, and invasion of privacy against several proposed new defendants. None of these are federal claims which could invoke this Court's subject-matter jurisdiction. *See, e.g.*, *O'Connor v. Pierson*, 568 F.3d 64, 66 (2d Cir. 2009) (identifying invasion of privacy as a state common law claim and noting that the district court's federal question jurisdiction was based on constitutional claims); *Grogan v. Blooming Grove Vol. Ambulance Corp.*, 917 F. Supp. 2d 283, 289 (S.D.N.Y. 2013) ("Plaintiff also attempts to bring a [federal] claim for libel under Section 1983, but no such cause of action exists." (citing *Ass'n for the Pres. of Freedom of Choice, Inc. v. Simon*, 299 F.2d 212, 214 (2d Cir. 1962) (portion of claim based on "libel has no connection with any federally protected right but solely with a right arising out of state law")), *aff'd sub nom. Grogan v. Blooming Grove Vol. Ambulance Corps*, 768 F.3d 259 (2d Cir. 2014); *Collins v. W. Hartford Police Dep't*, 380 F. Supp. 2d 83, 94–95 (D. Conn. 2005) ("It is well established that defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation, . . . Because plaintiff [ ] has not alleged a deprivation of a tangible interest beyond [ ] reputational harm . . . his complaint must therefore be read as stating exclusively a state law claim of defamation against all defendants."), *aff'd on other grounds*, 324 F. App'x 137 (2d Cir. 2009).

Accordingly, in the absence of any proposed amended complaint having a viable claim, the Court will deny Mr. Thomas's motion to amend as futile.

## G.  Motion to Remand

Mr. Thomas has moved to remand this case back to the Superior Court for Judicial District of New Haven. Pl.'s Mot. to Remand. Defendants have not responded.

Because the Court lacks subject matter jurisdiction over this action, it will grant Mr. Thomas's motion to remand. *See* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").[7]

## IV.   CONCLUSION

For the foregoing reasons, Plaintiff's oral motion to dismiss the Guilford Police Department, the National Conference of the United Church of Christ, and All Members of the First Congregational Church of Guilford, ECF No. 67, is **GRANTED**; Defendants' motions to dismiss these same Defendants, ECF Nos. 19, 23, 25, 33 (in part), and 35, are **DENIED** as moot; Defendants' motion to dismiss any remaining Defendants, ECF No. 33 (in part), is **GRANTED;** Plaintiff's motion to amend, ECF No. 47, is **DENIED**; and  Plaintiff's motion to remand, ECF No. 39, is **GRANTED**.

The Clerk of Court is respectfully requested to remand this case to the Connecticut Superior Court, the Judicial District of New Haven and then close the case here.

**SO ORDERED** at Bridgeport, Connecticut, this 27th day of July, 2020.

/s/ Victor A. Bolden
VICTOR A. BOLDEN
UNITED STATES DISTRICT JUDGE

---

[7] The Supreme Court has stated that "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety," including any "pendent state-law claims." *Arbaugh*, 546 U.S. at 514. But in light of the express language of 28 U.S.C. § 1447(c), requiring remand where a state court case had been removed to federal court and the federal court ultimately lacked subject matter jurisdiction, remanding this case back to state court, its original venue, is the appropriate course of action.